UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 22-CR-169-JKP |
| ) | |
| COLEMAN BLEVINS ) | |
|     Defendant. ) | |

**<u>DENFENDANT'S SENTENCING MEMORANDUM</u>**

Coleman Thomas Blevins, by and through his attorney Lance Kennedy, respectfully submits this memorandum in support of his sentencing on May 8, 2024. The Government has asked the Court to abandon the Guidelines, ignore mitigating facts, and impose an unduly punitive sentence of 78 months in custody and three years of supervised release. Mr. Blevins respectfully asks the Court to reject the Government's invitation to vary upward, adhere to the Guidelines, and consider the mitigating factors of his case at sentencing.

**I.    LEGAL STANDARDS**

Sentencing begins with the Guidelines. At the start of every sentencing proceeding, the district court "must determine the applicable Guidelines range" by "consider[ing] the presentence report as well as any objections the parties might have." *Molina-Martinez v. United States*, 578 U.S. 189, 193 (2016) (citing *Peugh v. United States*, 569 U.S. 530, 541 (2013). The court then hears argument from the parties on the "appropriate sentence, including whether the sentence should be within the Guidelines range or not." *Id*. The assessment must be "individualized" and "based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). And while district courts are vested with "discretion to depart from the Guidelines," they must nevertheless "consult those

Guidelines and take them into account when sentencing." *Molina-Martinez,* 578 U.S. at 193 (quoting *United States v. Booker*, 543 U.S. 220 (2005)) (internal quotation marks omitted).

When considering an appropriate sentence, courts are bound to follow the "parsimony principle" embedded in 18 U.S.C. §3553(a), "a broad command that instructs courts to 'impose a sentence sufficient, but not greater than necessary, to comply with' the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 581 U.S. 62, 67 (2017) (citing 18 U.S.C. § 3553(a)). Courts must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed" to account for the four goals of sentencing, the applicable guidelines, any relevant policy statements, avoiding "unwarranted sentence disparities," and restitution to any victims. 18 U.S.C. § 3553(a).

In Mr. Blevins's case, it is undisputed that the Guidelines would provide for a sentence of 51-63 months in custody and 1-3 years of supervised release. PSR at ¶¶ 58, 61. It is also undisputed that Mr. Blevins's case warrants a two-year downward departure under USSG §5K2.23, as he was sentenced to two years on related state offenses that were completed before his federal custody and not credited to his federal sentence. PSR at ¶ 73; *see* Doc. 31 at 7.

But that is where the agreement ends. Ignoring both the law and the mitigating details of Mr. Blevins's case, the Government asks the Court to vary upward by a matter of years and impose a 78-month custodial sentence with three years of supervised release. Doc. 31 at 7. Under well-settled law, the sentencing court must consider the individual circumstances of a defendant's case, *see Gall*, 552 U.S. at 50; here, however, the Government has dispensed with particulars in favor of

2

unsupported generalizations about Mr. Blevins's conduct and speculative conclusions about his intent.

The Government's sentencing memorandum would justify an upward variance on three factors alone: (1) the seriousness of the offense, respect for the rule of law, and just punishment; (2) the deterrent effect of a lengthier sentence; and (3) the need to protect the public from further crimes. *Id.* at 6. None of the Government's cited reasons support the sentence it has asked for. To the contrary, a closer look at the nature and circumstances of the offense shows that a Guidelines sentence is "sufficient, but not greater than necessary," to comply with the purposes set forth in § 3553(a)(2)—namely, "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C.A. § 3553

## II. ARGUMENT

### 1. The Nature and Circumstances of the Offense

Shortly after noon on May 27, 2021, Mr. Blevins snapped a selfie in a gun shop with a pistol in his hand. PSR ¶10. He sent the picture to a group of his on Snapchat—accompanied by a reprehensible statement—and an undercover agent in the group shared it with the Kerr County Sheriff's Office. *Id.* ¶¶10-11. Late the next day, the Sheriff dispatched officers to his home, searched his apartment, and placed him under arrest. *Id.* ¶11.

The next April, Mr. Blevins was charged under 18 U.S.C. § 922(g)(1) with three counts of felon in possession of a firearm. PSR ¶ 1. He has since pled guilty to Count Two of the indictment for the May 27 possession in the gun shop, and the Government has agreed to dismiss the remaining

counts at sentencing. *Id.* ¶¶ 2, 6. The nature and circumstances of this offense, though serious, do not warrant the upward leap in sentencing that the Government has asked for. To the contrary, these illustrate the importance of a just and measured sentence that weighs the particulars of the case and the actual risks posed by Mr. Blevins's actions.

To begin with, the fleeting moment of possession in question took place in the controlled environment of a gun shop. PSR ¶12. Mr. Blevins picked it up not to buy or use, but rather to snap a photo for his group chat. His actions, no doubt, were ill-advised, but the context belies the Government's suggestion that he was "reinforc[ing] his commitment" to the putative threat to others which accompanied the photo. Not only did he lack the capacity to carry out any such threat—the firearm was locked up, unloaded, and secure under the store's control—he also clearly lacked the intent. After all, he made no efforts to buy the gun or take it off site, and he owns no firearms of his own.

Moving on, the messages he sent along with this photo were inappropriate and offensive, but they never rose above the level of mere speech. They were not posted on a website, pinned up on telephone poles, or otherwise broadcast to the public at large; they were confined to an invitation-only group on Snapchat, the other members of which, as the Government concedes, habitually made statements much like the one that accompanied Mr. Blevins's photo. Doc. 31 at 6.

In short, the nature and circumstances surrounding Mr. Blevins's possession of the firearm on May 27 tell a far subtler story than the Government's sentencing memorandum suggests. These were not serious threats backed by "ample firepower," *id.*, but misguided attempts at bravado that resounded in the online echo chamber of unpopular, sometimes radical beliefs. And while sometimes reprehensible, beliefs like his are protected by the First Amendment: It is well settled

that "a defendant's abstract beliefs, however obnoxious to most people, may not be taken into consideration by a sentencing judge." *Wisconsin v. Mitchell*, 508 U.S. 476, 485–86 (1993) (citing *Dawson v. Delaware*, 503 U.S. 159 (1992).

The real-time perception that these statements were mere bluster without backing was underscored by the actions of the Kerr County Sheriff's Office. Rather than arrest Mr. Blevins as soon as they saw his message, they waited till late afternoon the next day to secure their search and arrest warrants. They knew of his statements right away, but they waited more than 24 hours to act on them. Had Mr. Blevins's messages seemed objectively sincere, the Sheriff would have been compelled to arrest him immediately. But the messages were taken for what they were—bravado—and the Sheriff's delay shows clearer any other evidence that Mr. Blevins's statements presented no imminent or actionable threat to the public.

**2. The Punitive Purpose of Sentencing Warrants a Guidelines Sentence.**

According to the Government, an upward variance to 78 months and three years of supervised release "is necessary to reflect the seriousness of the offense, promote the rule of law, and provide just punishment" for Mr. Blevins. Doc. 31 at 6; *see* 18 U.S.C. § 3553(a)(2)(A). This is necessary, the Government contends, because his acts were "calculated" to show a bona fide intention to "carry[] through with the acts he threatened." *Id.*

The Government's argument is heavy on insinuation and light on fact. As discussed above, the nature and circumstances of the offense show that Mr. Blevins could not have "possess[ed] firearms" to "inform[] others of his armed-and-readiness," *id.*, because he was neither armed nor ready. True, he briefly held a firearm for a moment on the floor of the gun shop, but he lacked the capacity and the intent to use it. Nor were "public posts" of him "timed and calculated" to prove that he meant to carry through with some threat. *Id.* His Snapchat messages were shared privately

5

in an invitation-only group chat, and the people in the chat were inured to radical statements like his.

But the Government is right in one respect: the Court "should take him at his word": He admits that he was wrong, and he has accepted full responsibility for his actions. PSR. ¶18. According to Mr. Blevins, these were born of immaturity, foolishness, and a yearning for attention. PSR. ¶18. Thus, considering "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," the Court should reject the Government's recommendation of an upward variance. Mr. Blevins recognizes the seriousness of the conduct that brought him before the Court, and a sentence within the Guidelines would be "sufficient, but not greater than necessary," to serve this goal of sentencing. Mr. Blevins has already had two years in custody to reflect on his actions, and a Guideline sentence of 51 months and a year of supervised release would balance the seriousness of the conduct against the mitigating circumstances of his case.

### 3. The Deterrent and Protective Purposes of Sentencing Warrant a Guidelines Sentence.

The Government further contends that "a substantial sentence would help send a message that online conduct has real-world consequences," and "help to deter Blevins and other like-minded individuals from committing further crimes." Doc. 31 at 6; *see* 18 U.S.C. § 3553(a)(2)(B), (C).

The real-world consequences of online conduct have already been made clear to Mr. Blevins; he has been in custody for conduct related to this case for two years already. Moreover, his conduct displayed neither the intent nor the capacity to carry out any putative threat, so an upward variance from the Guidelines would neither proportionally increase the deterrent effect nor better protect the public from further crimes. Indeed, he has already taken responsibility for his actions, and with

no history of violence, recidivism in Mr. Blevins's case is quite unlikely. A Guidelines sentence on Count Two would thus be "sufficient, but not greater than necessary" both to deter recidivism and protect the public.

### III. CONCLUSION

Under the factors set forth in 18 U.S.C. § 3553(a), a sentence within the guideline range of 51 to 63 months is "sufficient, but not greater than necessary," to serve the goals of sentencing Mr. Blevins. This range adequately reflects the seriousness of his offense, promotes respect for the law, and provides just punishment, while also considering the his potential for rehabilitation and lack of violent intent.

As discussed above, the Court may downward depart under USSG 5K2.23, because Mr. Blevins (1) has completed serving a 24-month term of imprisonment; and because (2) subsection (b) of § 5G1.3 would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Mr. Blevins therefore respectfully requests that the Court find a Guideline term of 51 months of custody with a one-year suspended sentence to be appropriate, but downward depart under USSG §5K2.23 to account for this Guideline consideration and sentence him to 27 months of custody and a one-year suspended sentence. For the sake of his family, Mr. Blevins further requests that he be sentenced to a federal correctional facility near Alpine, Texas.

Respectfully submitted,

*[signature]*

LANCE KENNEDY
LANCE KENNEDY LAW

500 W. 2nd St., Ste. 1900
Austin, TX 78710
(512) 565-8844
lance@lancekennedy.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of May 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*[signature]*

LANCE KENNEDY
Attorney for Defendant